FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ AUG 0 1 2019 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
DANE CLAYTON,

                 Plaintiff,

   -against-

UNITED STATES OF AMERICA,

                 Defendant.
-----------------------------------------------------------X

**REPORT AND RECOMMENDATION**
**18 CV 5867 (MKB)(LB)**

**BLOOM, United States Magistrate Judge:**

Plaintiff Dane Clayton brings this *pro se* action under the Federal Tort Claims Act ("FTCA" or "the Act"), 28 U.S.C. §§ 1346(b), 2671 *et seq.*, against the United States of America. Complaint ("Compl."), ECF No. 1.[1] Plaintiff alleges that the United States Postal Service ("the Postal Service" or "USPS") wrongfully denied plaintiff's request for a prohibitory order[2] and that this denial caused plaintiff severe emotional distress. Defendant moves to dismiss plaintiff's complaint pursuant to Rule 12 of the Federal Rules of Civil Procedure. The Honorable Margo K. Brodie referred defendant's motion to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the reasons set forth below, it is respectfully recommended that defendant's motion to dismiss plaintiff's complaint should be granted and plaintiff's claims should be dismissed for lack of subject matter jurisdiction or, in the alternative, for failure to state a claim.

---

[1] Plaintiff's complaint is 245 pages in length and lacks consistently numbered paragraphs or page numbers. For ease of reference, citations to the record refer to the page numbers generated by the Court's electronic filing system.

[2] "A prohibitory order is an order issued by the U.S. Postal Service that prohibits a mailer who has previously sent 'any pandering advertisement which offers for sale matter which the addressee in his sole discretion believes to be erotically arousing or sexually provocative' from further mailings of such materials to the addressee." Def.'s Reply Mem. of Law ("Def. Reply") 3 n.1, ECF No. 28 (quoting 39 U.S.C. § 3008(a)).

**BACKGROUND**

I.    Plaintiff's Claims and Relief Requested

Plaintiff alleges that he suffered severe emotional distress due to the actions of the Postal Service.    Compl. 8.    Specifically, plaintiff explains that his "personal injury started Sat.10/21/2017, 6:05p [sic], when I was denied a Prohibitory Order against Crunch Fitness." Compl. 6.[3]    Subsequently, plaintiff alleges he was diagnosed with Acute Stress Reaction[4] and was referred to a psychiatrist and psychotherapist.  Compl. 5; see also Compl. 102 (Ex. 17).

In support of his claims, plaintiff quotes Rowan v. Post Office Dep't, 397 U.S. 728 (1970), which upheld the constitutionality of 39 U.S.C. § 3008[5] (hereinafter "the Pandering Law" or "§ 3008").    See Compl. 5-7, 15-22 (Ex. 3).    The Pandering Law establishes a mechanism for a postal customer to stop receiving pandering advertisements that the postal customer "believes to be erotically arousing or sexually provocative." Compl. 37; § 3008(a). Specifically, upon a customer's request, the Postal Service issues an order, called a prohibitory order, directing a sender and his agents to refrain from sending any further mailings to a designated addressee and to delete the name of the designated addressee from all mailing lists owned or controlled by the sender.  Compl. 37; § 3008(a)-(b).[6]

---

[3] Although plaintiff informed the Court at the February 21, 2019, pre-motion conference that he is a USPS employee, this is not an employment-related action.

[4] Plaintiff appends to the complaint extensive information regarding acute stress reaction disorder.  One of plaintiff's exhibits defines the condition as "[a] transient disorder that develops in an individual without any other apparent mental disorder in response to exceptional physical and mental stress and that usually subsides within hours or days." Compl. 218 (Ex. 25).

[5] Plaintiff appends to the complaint 39 U.S.C. § 4009, Pub. L. 90-206, 81 Stat. 645 (1967) (current version at 39 U.S.C. § 3008). Compl. 12-14 (Ex. 2).

[6] Plaintiff also appends to the complaint In re Ritchie Hallanan Real Estate, Ltd., P.S. Docket No. P 03-393, 2004 WL 7329849 (May 18, 2004) (ruling on a sender's petition challenging a complaint that the sender had violated a prohibitory order).  Compl. 23-26 (Ex. 4).    This administrative decision, concluding that the sender had violated a particular prohibitory order, is

Plaintiff seeks $100,000,000 in damages.[7]  Plaintiff also seeks the following injunctive relief: 1) "I want my name, address, apartment #, city, state and zipcode to be removed from USPS Every Door Direct Mail [EDDM];"  2) "I want my name, address, apartment #, city, state and zipcode to be removed from USPS Extended Carrier Route Walking Sequence Saturation [ECRWSS]/ Enhanced Carrier Walk Sequence High-Density [ECRWSH];" 3) "I want my name, address, apartment #, city, state and zipcode to be removed from businesses, commercial, noncommercial, religious, political speech, charitable and marketing by USPS."  Compl. 6. Further, plaintiff seeks prohibitory orders against 1) Crunch Fitness; 2) YMCA; 3) SUNY Downstate Medical Center; 4) BJ's; 5) Blink Fitness; 6) Optimum Cable/Altice; and 7) Abigail's Pharmacy. Compl. 8.

II.    Plaintiff's Underlying USPS Administrative § 3008 Proceedings

Between October 12, 2017, and February 28, 2018, plaintiff submitted various prohibitory order requests, using PS Form 1500, "Application for Listing and/or Prohibitory Order" ("application"), including for a prohibitory order against Crunch Fitness ("Crunch"). Compl. 49.[8]  While plaintiff has previously obtained a prohibitory order,[9] the Crunch application

---

not binding on this Court and is also procedurally very different from plaintiff's case, given that in this case, no prohibitory order was issued by the Postal Service against Crunch Fitness.
[7] The Court construes the complaint to seek this amount based on plaintiff's administrative claim to USPS, which is attached to the complaint and seeks "$100 million dollars" for personal injury. Compl. 64 (Ex. 12).  Further, plaintiff also attaches to the complaint medical receipts, Compl. 102-104 (Ex. 17), and a "Judgment Fund Voucher for Payment" form that lists $100,000,000, plus "20-25% monthly, forever royalty for address management system by USPS," as the total amount he seeks.  Compl. 95 (Ex. 16).  Although the government argues that the Court lacks subject matter jurisdiction because the FTCA's waiver of sovereign immunity does not extend to the injunctive or declaratory relief sought in plaintiff's complaint, Def.'s Mem. Supp. Mot. Dismiss ("Def. Mem.") 11, ECF No. 26-2, as plaintiff's complaint also seeks damages, the Court should not dismiss the complaint on this ground.
[8] Administrative Law Judge (ALJ) Diane M. Mego's findings of fact note that plaintiff submitted additional prohibitory order applications regarding the YMCA, Blink Fitness, and SUNY Downstate Medical Center, which were also denied by the Postal Service's Prohibitory Order

3

was denied by the Postal Service's Prohibitory Order Processing Center ("the Center"). Compl. 49, 40.[10] Plaintiff's complaint attaches the denial of his Crunch prohibitory order application. Compl. 53-56 (Ex. 10). The denial is a form enumerating twenty-one (21) potential reasons why the application "cannot be processed." Compl. 54. The form indicates that the Crunch application could not be processed because the "Mail piece submitted does not meet the criteria for a Prohibitory Order" and the "Original mail piece was addressed to [**"ECRWSS Local Resident Customer", Our Neighbor; Current Resident, etc.**] (no addressee name/address). Mailer will not have addressee name and address in their mailing database to remove." Compl. 54 (emphasis in original); see also Compl. 49, 40. The Crunch mail piece is attached and is addressed to, "To Our Neighbor," followed by plaintiff's address. Compl. 56 (Ex. 10); see also Compl. 40.

On April 30, 2018, plaintiff filed a "Petition for Hearing under Prohibition of Pandering Advertisements in the Mail" ("petition"). Compl. 50. The petition cited 39 C.F.R. § 963 ("Rules of Practice in Proceedings Relative to Violations of The Pandering Advertisements Statute, 39 U.S.C. 3008") and was docketed as P.S. Docket No. PAN 18-98. Compl. 50-51, 38. The petition explained that plaintiff did not want to receive "[o]ffensive, lewd and salacious

---

Processing Center ("the Center"). Compl. 49. As only the Crunch denial was noted in the complaint's "Statement of Claim," Compl. 5-6, and the USPS National Tort Center administrative complaint form describes the October 21, 2017, Crunch denial as the "Date and Day of Accident," Compl. 64 (Ex. 12), the Court limits its consideration in this Report and Recommendation to plaintiff's claim regarding the denial of the Crunch application by the Center. Furthermore, plaintiff's complaint only appended the Center's denial as to Crunch, but not the Center denials as to YMCA, Blink, or SUNY Downstate Medical Center. Compl. 53-56 (Ex. 10).

[9]    Upon plaintiff's request, the Center issued a prohibitory order against Capital One and Discover on September 18, 2017. See Compl. 49, 40.

[10] Without ruling on the propriety of the denials, ALJ Mego made factual findings that the YMCA and SUNY Downstate Applications were denied because "the mail pieces did not offer anything for sale" and the Crunch and Blink Applications were denied because the "[m]ailer will not have addressee name and address in their mailing database to remove." Compl. 49, 40.

4

unsolicited advertisements," and he does "not feel insulated from erotically arousing or sexually provocative materials that comes through [his] mailbox." Compl. 37. Plaintiff did not allege violations of a prohibitory order that had been issued; rather, the petition requested that prohibitory orders be issued against various entities, including Crunch,[11] and that plaintiff's name and address be removed from "USPS Every Door Direct Mail system [EDDM]," and from "USPS Extended (sic Enhanced) Carrier Route Walking Sequence Saturation system[ECRWSS]/Enhanced Carrier Walk Sequence High-Density system [ECRWSH]." Compl. 40-41.

On May 16, 2018, the Postal Service filed a motion to dismiss plaintiff's petition, and on May 18, 2018, plaintiff filed a response. Compl. 50. On July 2, 2018, Administrative Law Judge (ALJ) Diane M. Mego dismissed plaintiff's petition due to lack of jurisdiction. Compl. 52, 36. On July 4, 2018, plaintiff appealed ALJ Mego's decision, and on July 18, 2018, the Postal Service filed their opposition. Compl. 36. On July 19, 2018, Judicial Officer (JO) Gary E. Shapiro affirmed ALJ Mego's July 2, 2018, decision to dismiss plaintiff's petition due to lack of jurisdiction. Compl. 45.

Plaintiff's instant complaint appends ALJ Mego's decision as an exhibit. Compl. 46-52 (Ex. 9). The decision explains that under § 3008, "the Postal Service may, under the appropriate circumstances, issue a prohibitory order against a mailer in response to an application by a postal customer." Compl. 50. Plaintiff argued that under Rowan and the doctrine of primary jurisdiction, he was entitled to a hearing and a determination of whether his applications were improperly denied and of "the propriety of certain Postal Service policies regarding mail

---

[11] Plaintiff's petition requested that prohibitory orders be issued against Crunch, YMCA, SUNY Downstate Medical Center, BJ's, Blink Fitness, Optimum Cable/Altice, Abigail's Pharmacy, and B&H Photo. Compl. 41.

preparation by mailers." Compl. 50-51. ALJ Mego explains that the Supreme Court's "affirmation [in Rowan] of the right of an addressee to request a prohibitory order does not create any new rights under Part 963 or support Mr. Clayton's argument that he is entitled to a hearing under Part 963 based on the denial of his Applications." Compl. 51.

Plaintiff also appends to his complaint JO Shapiro's decision on appeal, which affords an overview of the Pandering Law's statutory and regulatory framework. Compl. 35-45 (Ex. 8). JO Shapiro's decision explains that, in addition to affording a mechanism for seeking a prohibitory order, the Pandering Law establishes a mechanism for the Postal Service to enforce the order through an administrative complaint, to which the sender is entitled to respond and is given an opportunity to be heard at a hearing. Compl. 38; § 3008(d).[12] The Postmaster General delegated authority to the USPS Judicial Officer to conduct such hearings and render determinations, which are governed by 39 C.F.R. § 963, Rules of Practice in Proceedings Relative to Violations of The Pandering Advertisements Statute, 39 U.S.C. 3008 (hereinafter "the Pandering Law Hearing Regulations").[13] Compl. 38.  However, the Pandering Law Hearing Regulations apply only to cases where the Center has issued a complaint alleging a violation of a prohibitory order and the *sender* subject to the order has requested a hearing.  Compl. 38-39 (emphasis added). Instead, another policy, not included in Part 963, codifies the process for prohibitory order

---

[12] The statute also provides a procedure for the attorney general to enforce the prohibitory order in a U.S. District Court.  Specifically, the Pandering Law authorizes the Postal Service to request that the Attorney General file an application with a U.S. District Court for an order directing compliance with a prohibitory order. Compl. 38; § 3008(d)-(e).
[13] Although the Postal Service may request that the Attorney General seek judicial intervention in the appropriate U.S. District Court to obtain a compliance order, as discussed *infra*, plaintiff cannot invoke the Administrative Procedure Act to obtain judicial review by a district court of any legal wrong committed by the USPS under § 3008.  § 3008(h); see also 5 U.S.C. § 700 et seq.

requests: <u>Mail Standards of the United States Postal Service, Domestic Mail Manual</u> § 508.9. Compl. 39 n.3; <u>Domestic Mail Manual</u> § 508.9 (hereinafter "DMM").[14]

Reviewing ALJ Mego's decision *de novo*, JO Shapiro affirmed the decision below. Compl. 42-45. Like ALJ Mego, JO Shapiro dismissed plaintiff's petition for lack of jurisdiction. <u>Id.</u>  He concluded that the Pandering Law Hearing Regulations do not provide for an administrative adjudication of prohibitory order applications, customer complaints about mail programs, nor other aspects of the Postal Service's implementation of the Pandering Law – with the exception of the expressly delegated authority to adjudicate *senders'* petitions regarding whether such senders have violated a validly issued prohibitory order.  <u>Id.</u> (emphasis added) (citing 39 U.S.C. § 204 and quoting <u>In re Zion's Hope, Inc.</u>, P.S. Docket No. 38/163, 1993 WL 13957034 (Aug. 23, 1993) ("although ... certain authority has been delegated to the Judicial Officer in connection with the performance of his 'quasi-judicial duties' that authority does not extend to amending the Domestic Mail Manual.")).[15]  JO Shapiro's decision expressly does not question plaintiff's discretion to decide whether he believes mail is erotically arousing or sexually provocative, stating "review on that basis is not proper." Compl. 42-43.

---

[14] The DMM, "a looseleaf document published and maintained by the Postal Service," is incorporated by reference into the Code of Federal Regulations. 39 C.F.R. § 111.1. The DMM is available at https://pe.usps.com/Downloads/DMMIMMQSG (last visited on July 31, 2019).

Plaintiff appends to the Complaint a blank prohibitory order application form, which includes a page for a postal employee to process the application. Compl. 57-62 (Ex. 11).  The form refers the employee to DMM § 508.9 and states "Postmasters may not refuse to accept PS Form 1500 because the advertisement in question does not appear to be erotically arousing or sexually provocative. Only the addressee may make that determination." Compl. 61.

[15] The Clerk of Court is directed to send plaintiff the attached copies of all the unreported cases cited herein.

III.    Plaintiff's Administrative FTCA Claim

Plaintiff's complaint includes a copy of his USPS National Tort Center claim form, dated July 25, 2018. Compl. 64-65 (Ex. 12). The date of injury is listed as October 21, 2017, with the annotation "CRUNCH FITNESS PROHIBITORY ORDER DENIAL." Compl. 64. He provides the following description of his personal injury: "1) captive audience 2) petition government 3) emotional injury 4) invasion of privacy 5) intentional infliction of emotional distress 6) negligent infliction of emotional distress 7) insulated 8) censoring 9) unfettered discretion 10) to be left alone." Id. Plaintiff attaches additional pages to the form to explain the basis of his claim. Compl. 66-78. He states, *inter alia*, "I am injured according to an Act of Congress in Title 39 USC 3008, formerly 4009. I am injured according to the regulation of an executive department for the Prohibitory Order. I could Opt Out for credit cards and insurance offers. I could Opt Out for National Direct Mail. Why I can not Opt Out from USPS Every Door Direct Mail? I am injured due to Every Door Direct Mail [EDDM], Extended Carrier Route Walking Sequence Saturation [ECRWSS] and Enhanced Carrier Walk Sequence High-Density [ECRWSH] systems," Compl. 67, and "[i]t is my bonafide belief that I will have future injuries because my address can not be removed from the EDDM system without removing my address from the Address Management System, rendering it unrecognizable by the Postal Service and other mailers," Compl. 71.

Plaintiff's complaint also includes an August 3, 2018, letter from a USPS government liaison to Senator Charles Schumer's office in response to a July 10, 2018, correspondence on plaintiff's behalf. Compl. 93 (Ex. 15). Annotated with a citation to 28 U.S.C. § 2675, the letter is offered as "newly discovered evidence" of plaintiff's tort claim. The letter states, *inter alia*: "We contacted attorneys at postal headquarters, who advise that Mr. Clayton's request is beyond

8

the scope of the remedy authorized by the Pandering Statute. When one of the Postal Service's systems is used to provide the addressee's information, the mailer would not have an addressee's name or address to remove in their database—the statutorily available remedy under the Pandering Statute." Compl. 93.

On September 19, 2018, the Postal Service issued the final denial of plaintiff's administrative FTCA claim. Compl. 30 (Ex. 6). The claim examiner denied the FTCA claim because "the allegations you assert in your claim form do not fall within the provisions of the Federal Tort Claims Act." Compl. 30. The letter further explains that "you have already pursued your Pandering Petition through the appropriate administrative channels. In that action, Administrative Judge Diane Mego granted the U.S. Postal Service's Motion to Dismiss. As such, your matter has been decided in the appropriate forum and there is no further recourse available to you under the Federal Tort Claims Act." Compl. 30.[16]

IV.    Procedural History

On October 19, 2018, plaintiff filed the instant *pro se* action against the United States of America under the Federal Tort Claims Act. Compl. 3-5. On November 8, 2019, plaintiff filed a motion seeking to enter evidence on the record, including "the doctor's note, for being 1) Injured Personally according to the Federal Torts Claims Act/Standard Form 95 2) diagnosed with Acute Stress Reaction 3) referred to a Psychiatrist 4) referred to a Psychotherapist 5) being held a Captive Audience and 6) have a genuine dispute as to any material fact and judgment as a matter of law because of being denied Prohibitory Orders by the United States Postal Service." Pl. Notice of Mot. 1, ECF No. 9 (citing 28 U.S. Code § 2675; Fed. R. Civ. P. 56). On November 15,

---

[16] The letter advised plaintiff that he had six (6) months from September 19, 2018, to file suit against the United States of America in a U.S. District Court in accordance with 28 U.S.C. § 2401(b). Plaintiff timely filed this action.

2018, the Honorable Margo K. Brodie denied the motion without prejudice as premature because defendant had not yet responded to the complaint. Nov. 15, 2018, Electronic Order.

On January 31, 2019, defendant's counsel requested a pre-motion conference, or alternatively a briefing schedule, for defendant's anticipated motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Def.'s PMC Mot. 1, ECF No. 19.[17] Plaintiff also requested a pre-motion conference, or in the alternative, a briefing schedule. Pl.'s PMC Mot. 1, ECF No. 20. Judge Brodie referred the pre-motion conference requests to me, as well as any motion resulting from the parties' requests. Feb. 6, 2019, Electronic Order. I held the pre-motion conference on February 21, 2019. Ct. Order, ECF No. 24. On the record at the conference, plaintiff was offered the opportunity to amend his complaint, which he declined. Id. Plaintiff stated he would proceed on his original complaint. Id. I set the briefing schedule for defendant's motion to dismiss, id., and the fully briefed motion was timely filed on April 26, 2019. See Def.'s Mot. Dismiss, ECF No 26; Pl.'s Mem. Supp. ("Pl. Opp'n"), ECF No. 27; Def. Reply, ECF No. 28.

Defendant moves to dismiss plaintiff's complaint for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6). Def. Mem. 6. Defendant's main argument under Rule 12(b)(1) is that the Court lacks subject matter jurisdiction because plaintiff's claim falls within the Postal Matter Exception to the FTCA's waiver of sovereign immunity. Def. Mem. 9-11.[18] Defendant also argues that plaintiff's case

---

[17] The case was stayed pending restoration of appropriations to the Department of Justice, and defendant was granted an extension of time to respond to plaintiff's complaint until February 1, 2019. Jan. 2, 2019, Electronic Order; Jan. 28, 2019, Electronic Order.

[18] Defendant also argues that plaintiff does not satisfy the FTCA's private analogue requirement because "there is no tort claim for the denial of a prohibitory order regarding pandering advertisements." Def. Mem. 11. Without deciding the matter, the Court assumes for the sake of argument that plaintiff could satisfy the analogue requirement based on the tort of trespass. See

fails on the merits because plaintiff fails to state a claim for intentional or negligent infliction of emotional distress under New York law. Def. Mem. 12.[19] Plaintiff timely served his opposition on defendant March 25, 2019. Pl. Opp'n 38.[20] Plaintiff argues that defendant's motion is deficient because defendant has not submitted a report by a physician. Pl. Opp'n 15-16. This type of report, however, is not required for a motion to dismiss under Rule 12(b)(1) nor Rule 12(b)(6). Plaintiff's opposition also includes extensive background on the FTCA, including the history of the discretionary function exception to the FTCA's waiver of sovereign immunity. Pl. Opp'n 9-12.[21] Plaintiff seems to acknowledge that the discretionary function exception applies to this case. See Pl. Opp'n 12.[22]

---

People v. Shack, 86 N.Y.2d 529, 536 (1995) ("As the Rowan Court noted in regulating unwanted mail, permitting communications to be foisted upon an unwilling recipient in a private place would be tantamount to licensing a form of trespass...") (citing Rowan, 397 U.S. at 736-37); see also Leyse v. Domino's Pizza, 48 A.D.3d 359, 360 (N.Y. App. Div. 1st Dep't 2008); Tillman v. Distrib. Sys. of Am., Inc., 224 A.D.2d 79, 87 (N.Y. App. Div. 2d Dep't 1996). Because the Court recommends that the case be dismissed on other grounds, it is unnecessary to reach this issue.

[19] In the alternative, defendant argues that "to the extent the Court construes Plaintiff's claim as one seeking review of the USPS's action under the Administrative Procedure Act ("APA"), that claim also fails because the USPS's decision was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Def. Mem. 6. While the Court appreciates defendant's counsel's effort to construe *pro se* plaintiff's complaint liberally, the Court should not construe plaintiff's complaint as one under the APA because the Pandering Law expressly exempts USPS actions under § 3008 from judicial review pursuant to the APA. See § 3008(h) ("The provisions of subchapter II of chapter 5, relating to administrative procedure, and chapter 7, relating to judicial review, of title 5, shall not apply to any provisions of this section.").

[20] Although plaintiff cites the Rule 56 standard in his papers, Pl. Opp'n 6, 8, he requests that the Court dismiss defendant's motion, id. at 20, 38. The Court construes plaintiff's memorandum as plaintiff's opposition to defendant's motion to dismiss, and not as a cross-motion for summary judgment.

[21] Plaintiff also includes a discussion of the Feres doctrine, Pl. Opp'n 23-24; however, as plaintiff does not allege that he is a service member who suffered injury in the course of activity incident to service, this doctrine does not apply to his case. See Feres v. United States, 340 U.S. 135 (1950); Doe v. Hagenbeck, 870 F.3d 36 (2d Cir. 2017).

[22] Within plaintiff's discussion of the FTCA's discretionary function exception, he states: "One only need read § 2680 in its entirety to conclude that Congress exercised care to protect the Government from claims, however negligently caused, that affected the governmental functions. . . It will be noted from the form of [§ 2680(a)] that there are two phrases describing the excepted

I respectfully recommend that defendant's motion to dismiss should be granted, albeit for different grounds than those cited by defendant. Regardless of how the Court construes plaintiff's claims, the complaint should be dismissed.

## STANDARDS OF REVIEW

### I.    Pro Se Actions

Because plaintiff is proceeding *pro se*, the Court "read[s] his papers liberally and interpret[s] them to raise the strongest arguments that they suggest." Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006) (internal quotation marks and citation omitted). A complaint filed *pro se* "is to be liberally construed and . . . however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted).

### II.    Standard of Review under Federal Rule of Civil Procedure 12(b)(1)

Plaintiff has the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists. Fountain v. Karim, 838 F.3d 129, 134 (2d Cir. 2016) (citing Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). Absence of subject matter jurisdiction may be raised by a party or by the Court *sua sponte* at any time. Lyndonville Sav. Bank & Tr. Co. v. Lussier, 211 F.3d 697, 700 (2d Cir. 2000). Although courts usually do not raise arguments *sua sponte*, "federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." Henderson ex rel. Henderson v. Shinseki, 562

---

acts of government employees. The first deals with acts or omissions of government employees, exercising due care in carrying out statutes or regulations, whether valid or not. It bars tests by tort action of the legality of statutes and regulations. The second is applicable in this case. It excepts acts of discretion in the performance of governmental functions or duty 'whether or not the discretion involved be abused.'" Pl. Opp'n 11-12.

U.S. 428, 434 (2011) (citing <u>Arbaugh v. Y & H Corp.</u>, 546 U.S. 500, 514 (2006)).   When deciding a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, the court may rely on evidence outside the pleadings. <u>Cortlandt St. Recovery Corp. v. Hellas Telecomms.</u>, 790 F.3d 411, 417 (2d Cir. 2015) (citing <u>Makarova</u>, 201 F.3d at 113).   However, the court "must take all uncontroverted facts in the complaint…as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." <u>Fountain</u>, 838 F.3d at 134 (quoting <u>Tandon v. Captain's Cove Marina of Bridgeport</u>, 752 F.3d 239, 243 (2d Cir. 2014)).   If the Court determines that subject matter jurisdiction is lacking, the case must be dismissed. <u>Lyndonville</u>, 211 F.3d at 700-01); Fed. R. Civ. P. 12(h)(3).

III.    <u>Standard of Review under Federal Rule of Civil Procedure 12(b)(6)</u>

When deciding a motion to dismiss under Rule 12(b)(6), the Court accepts the allegations in plaintiff's complaint as true and draws all reasonable inferences in favor of the non-moving party. <u>Brown Media Corp. v. K&L Gates, LLP</u>, 854 F.3d 150, 156-57 (2d Cir. 2017) (citations omitted).    Although all allegations in the complaint are accepted as true, "that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Mastafa v. Chevron Corp.</u>, 770 F.3d 170, 177 (2d Cir. 2014) (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)).   A complaint will survive a motion to dismiss only if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Id.</u>   "Determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id.</u>

## MANDAMUS

Although plaintiff does not cite 28 U.S.C. § 1361, "it is within this Court's purview to construe *pro se* Plaintiff's pleading broadly as one for mandamus." Iqbal v. Sec'y U.S. Dep't of Homeland Sec., 190 F. Supp. 3d 322, 330 (W.D.N.Y. 2016) (citation omitted). 28 U.S.C. § 1361 provides that "district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." It is well-established in this Circuit that plaintiff must satisfy three requirements to obtain mandamus relief under § 1361: "(1) a clear right in the plaintiff to the relief sought; (2) a plainly defined and peremptory duty on the part of the defendant to do the act in question; and (3) no other adequate remedy available." Sherman v. Black, 510 F. Supp. 2d 193, 198–99 (E.D.N.Y. 2007), aff'd, 315 F. App'x 347 (2d Cir. 2009); Xiong Ming Lu v. Sessions, No. 18-CV-1713 (BMC), 2018 WL 2376304, at *1 (E.D.N.Y. May 24, 2018) (quoting Anderson v. Bowen, 881 F.2d 1, 5 (2d Cir. 1989)). In other words, "[a] party who seeks a writ of mandamus must show a 'clear and indisputable right' to its issuance." Iqbal, 190 F. Supp. 3d at 330 (citing Escaler v. U.S. Citizenship & Immigration Servs., 582 F.3d 288, 292 (2d Cir. 2009) quoting Miller v. French, 530 U.S. 327, 339 (2000)). Issuing a writ of mandamus "is a drastic and extraordinary remedy reserved for really extraordinary causes." Xiong Ming Lu, 2018 WL 2376304, at *1 (quoting Cheney v. U.S. Dist. Ct. for D.C., 542 U.S. 367, 380 (2004)). Mandamus jurisdiction is not appropriate where the claims are "directed at the propriety of the regulations themselves" rather than an official's failure to comply. See Smith v. Schweiker, 709 F.2d 777, 779 (2d Cir. 1983); cf. City of New York v. Heckler, 742 F.2d 729, 739, 737 (2d Cir. 1984) (noting that the relevant statute and the regulations establish a right and a duty and distinguishing the case from Smith which involved a challenge to the agency's

14

substantive standards).   "Determination of mandamus jurisdiction necessarily encompasses on the-merits analysis of whether a mandamus writ should issue." Sherman, 510 F. Supp. 2d at 198 (quoting CETA Workers' Org. Comm. v. City of New York, 617 F.2d 926, 936 (2d Cir. 1980)).

I.   Plaintiff's Mandamus Claim

In his complaint, plaintiff asserts that "[t]he addressee of postal mail has unreviewable discretion to decide whether to receive further material from a particular sender," Compl. 5, and "[t]he power under §4009 and now §3008 for the householder is final and unlimited," id. at 7. Plaintiff complains, *inter alia*, that "[t]he Postmaster is not directing senders to refrain from further mailings to me" and "[t]he Post Office is suppose[d] to be removed from the right to involve itself in any determination of the content and nature of my objectionable materials." Compl. 6.  Plaintiff seeks, *inter alia*, a prohibitory order against Crunch Fitness.  Compl. 8. Accordingly, the Court liberally construes plaintiff's complaint as seeking a writ of mandamus directing the Postmaster General to issue a prohibitory order against Crunch.   The Court concludes, however, that plaintiff does not satisfy the strict standard for a § 1361 action.[23]

II.   Discussion of the Rights and Duties Alleged by Plaintiff

The theory of plaintiff's case turns on the meaning of 39 U.S.C. § 3008 (entitled "Prohibition of pandering advertisements")[24] and Rowan v. U.S. Post Office Department, 397 U.S. 728 (1970), the Supreme Court case which upheld § 3008 as constitutional.

The relevant provisions of the statute, 39 U.S.C. § 3008(a)-(c),[25] read as follows:

---

[23] In his statement of relief requested, Compl. 6-9, plaintiff seeks prohibitory orders against various entities, in addition to Crunch.  The result for those other prohibitory orders would be the same, as plaintiff does not establish a clear right and a peremptory duty under § 3008.

[24] The "business of pandering" has been defined as "the business of purveying textual or graphic matter openly advertised to appeal to the erotic interest of their customers." See Ginzburg v. United States, 383 U.S. 463, 467 (1966) (citation omitted).

(a) Whoever for himself, or by his agents or assigns, mails or causes to be mailed any pandering advertisement which offers for sale matter which the addressee in his sole discretion believes to be erotically arousing or sexually provocative shall be subject to an order of the Postal Service to refrain from further mailings of such materials to designated addresses thereof.

(b) Upon receipt of notice from an addressee that he has received such mail matter, determined by the addressee in his sole discretion to be of the character described in subsection (a) of this section, the Postal Service shall issue an order, if requested by the addressee, to the sender thereof, directing the sender and his agents or assigns to refrain from further mailings to the named addressees.

(c) The order of the Postal Service shall expressly prohibit the sender and his agents or assigns from making any further mailings to the designated addresses, effective on the thirtieth calendar day after receipt of the order. The order shall also direct the sender and his agents or assigns to delete immediately the names of the designated addressees from all mailing lists owned or controlled by the sender or his agents or assigns and, further, shall prohibit the sender and his agents or assigns from the sale, rental, exchange, or other transaction involving mailing lists bearing the names of the designated addressees.

The "shall" language in these sub-sections would suggest that the Postmaster General has a mandatory obligation to issue a prohibitory order upon the addressee's request and that the requesting addressee holds an absolute right to the prohibitory order. See § 3008(a)-(c). The caselaw, however, demonstrates that an addressee's right to the issuance of a prohibitory order is limited, as are the Postmaster General's duties under the statute.

The seminal case discussing the Pandering Law is <u>Rowan v. Post Office Dep't</u>, 397 U.S. 728 (1970). <u>Rowan</u> upheld the statute against claims made by sender businesses whose mailing activities were affected by the Pandering Law. 397 U.S. at 729. These senders argued that that the Pandering Law was unconstitutional as it violated their rights under the First and Fifth Amendments to the U.S. Constitution. <u>Id.</u> at 731. The opinion construes sub-section (b) and

---

[25] The other sub-sections are inapplicable to plaintiff's case. Sub-sections (d) and (e) provide procedures for violations of prohibitory orders after they are issued, including providing for a hearing to determine whether the order has been violated and providing authority for the Attorney General to initiate suit in a U.S. district court to seek an order directing compliance with the prohibitory order. § 3008(d)-(e). Sub-section (i) notes that "For purposes of this section-- (1) mail matter, directed to a specific address *covered in the order of the Postal Service*, without designation of a specific addressee thereon, shall be considered as addressed to the person named in the Postal Service's *order*;..." § 3008(i) (emphasis added).

sub-section (c) of the statute, specifically with respect to the intended scope of a prohibitory order issued pursuant to the statute, i.e., "[t]he order could prohibit all future mailings to the addressees, all future mailings of advertising material to the addressees, or all future mailings of similar materials." Id. at 732. The Court ultimately held that the first of the three interpretations of the statute, i.e., that a prohibitory order prohibits all future mailings to the addressee, best effectuates the intent of Congress in passing the Pandering Law. Id. at 735. In upholding the statute against a First Amendment argument that the statute violates senders' "constitutional right to communicate," the Court held that senders' constitutional rights do not include a right "to send unwanted material into the home of another." Id. at 738. Further, the Court concluded that the statutory scheme is not unconstitutionally vague and does not violate the rights of senders under the Fifth Amendment. Id. at 738-40.

Besides Rowan, caselaw construing the statute is limited.[26] Yet, from this caselaw, one clear right held by the addressee emerges. It is clear that an addressee's right to determine whether a mailpiece is "erotically arousing or sexually provocative" is indeed absolute. See Rowan, 397 U.S. at 739 n.6 ("The statute was intended to entrust unreviewable discretion to the addressee to determine whether or not the advertisement was 'erotically arousing or sexually provocative.'") (citation omitted); Baldigo v. Postmaster Gen., 514 F.2d 142, 145 (7th Cir. 1975) ("only the purely subjective standard of the recipient is involved in determining what is 'erotically arousing or sexually provocative'"); United States v. Lange, 466 F.2d 1021, 1025 (9th Cir. 1972) ("[the householder] is the sole judge of what is 'sexually provocative' under the

---

[26] Most of the cases are suits by senders challenging prohibitory orders or complaints issued by the Postal Service.

statute").[27]   However, although plaintiff is clearly entitled to declare a mailpiece arousing or provocative, this does not mean that he has a right to the relief he seeks here.[28]

Rowan contains language that seems, at first glance, to divest the Post Office of all discretion and confer on the addressee a right to a prohibitory order that is absolute in all respects, above and beyond the addressee's right to determine whether the mailpiece is arousing or provocative:

> Subsection (b) mandates the Postmaster General, upon receipt of a notice from the addressee specifying that he has received advertisements found by him to be within the statutory category, to issue on the addressee's request an order directing the sender and his agents or assigns to refrain from further mailings to the named addressee. Additionally, subsection (c) requires the Postmaster General to order the affected sender to delete the name of the designated addressee from all mailing lists owned or controlled by the sender and prohibits the sale, rental, exchange, or other transactions involving mailing lists bearing the name of the designated addressee...The ancient concept that 'a man's home is his castle' into which 'not even the king may enter' has lost none of its vitality, and none of the recognized exceptions includes any right to communicate offensively with another.  Both the absoluteness of the citizen's right under § 4009 and its finality are essential; what may not be provocative to one person may well be to another. In operative effect the power of the householder under the statute is unlimited; he may prohibit the mailing of a dry goods catalog because he objects to the contents—or indeed the text of the language touting the merchandise. Congress provided this sweeping power not only to protect privacy but to avoid possible constitutional questions that might arise from vesting the power to make any discretionary evaluation of the material in a governmental official.  In effect,

---

[27] It is worth noting that the stated basis of the Center's denial -- that the Crunch mailpiece was addressed to "Our Neighbor" and the sender would not have an addressee name in their mailing database to remove, Compl. 54 -- was not violative of plaintiff's right to deem the mailpiece arousing or provocative.  Moreover, the denial of plaintiff's administrative petition was based on lack of jurisdiction and made no determination regarding the arousing or provocative nature of the mailpiece.  Compl. 42.  There is nothing in the record to suggest that plaintiff's right was ignored.  Indeed, as previously noted, the Center's processing forms state, "Postmasters may not refuse to accept PS Form 1500 because the advertisement in question does not appear to be erotically arousing or sexually provocative.  Only the addressee may make that determination." Compl. 61.

[28] The Pandering Law does not provide a procedure for addressees to opt out of USPS mail programs, see § 3008, and so plaintiff plainly does not have a clear right to be removed from the EDDM, etc., under the statute.  Plaintiff's "right" to a prohibitory order, however, merits a closer look.

Congress has erected a wall—or more accurately permits a citizen to erect a wall—that no advertiser may penetrate without his acquiescence. The continuing operative effect of a mailing ban once imposed presents no constitutional obstacles; the citizen cannot be put to the burden of determining on repeated occasions whether the offending mailer has altered its material so as to make it acceptable…We therefore categorically reject the argument that a vendor has a right under the Constitution or otherwise to send unwanted material into the home of another. If this prohibition operates to impede the flow of even valid ideas, the answer is that no one has a right to press even 'good' ideas on an unwilling recipient. That we are often 'captives' outside the sanctuary of the home and subject to objectionable speech and other sound does not mean we must be captives everywhere. The asserted right of a mailer, we repeat, stops at the outer boundary of every person's domain. Rowan, 397 U.S. at 730, 737–38 (internal citations omitted).

Plaintiff capitalizes on this powerful language from Rowan in his pleading, repeating the words throughout his various petitions. However, the holding in Rowan does not go as far as plaintiff might hope. Rowan balanced the First Amendment rights of the sender against the rights of the addressee and determined that the Pandering Law did not violate the senders' First Amendment rights and thus lawfully curbed the senders' right to communicate. However, it did not enshrine a right of constitutional magnitude in the addressee to obtain prohibitory orders. The addressee's right "to be let alone" invoked in Rowan is not so much a formal right as "an 'interest' that States can choose to protect in certain situations." See Hill v. Colorado, 530 U.S. 703, 716-17 n.24 (2000) (citation omitted). This interest holds less weight than plaintiff would like partly because recipients of "objectionable mailings" may "effectively avoid further bombardment of their sensibilities simply by averting their eyes" and therefore "the short, though regular, journey from mail box to trash can is an acceptable burden, at least so far as the Constitution is concerned." Bolger v. Youngs Drug Prod. Corp., 463 U.S. 60, 72 (1983) (internal citations and quotation marks omitted).

Although there are cases construing Rowan that suggest that the Postmaster has a duty to issue a prohibitory order when requested, e.g., United States v. Lange, 466 F.2d 1021, 1024–25

(9th Cir. 1972) (concluding that postal customer form requests for prohibitory orders came within the business records exception of the hearsay rule and reasoning that the form requests are "a demand that an agency of government perform a service which it is required by law to perform") accord United States v. Pent-R-Books, Inc., 538 F.2d 519, 529 (2d Cir. 1976), Rowan and Lange did not decide whether a prohibitory order must issue in the first instance. In contrast, the few cases that examine the narrower question of whether the Postmaster General should issue a prohibitory order upon request are less expansive in their descriptions of the addressee's rights under the statute.[29]

Perhaps most analogous and instructive, is the mandamus action Baldigo v. Postmaster General seeking to compel the issuance of a prohibitory order "as originally requested." 390 F. Supp. 524, 525 (N.D. Cal. 1974). The Post Office had issued a prohibitory order against the sender of a mailing, which was a separate entity from the advertiser "within the mail matter," the entity originally identified by plaintiff in the prohibitory order request form. Id. The Court concluded that the advertiser entity identified on the prohibitory order request form was not a sender within the meaning of the Pandering Law and thus it was "impossible" to grant the relief requested by plaintiff. Id. ("[P]laintiff is seeking an order compelling either that which has already been done by defendant, or alternatively, that which defendant cannot properly do under the statute.")

---

[29] See e.g., Baldigo, 514 F.2d at 144-46 ("we do not conceive that the statutory shield should invariably be available to one clearly acting without good faith. Thus, one who continuously solicits material and who equally continuously then seeks prohibitory orders might establish a sufficient pattern of abuse to deprive himself of the statutory protection.") See also U.S. Postal Serv. v. Hustler Magazine, Inc., 630 F. Supp. 867 (D.D.C. 1986) (holding that § 3008 is unconstitutional under the First Amendment as applied to addressee congresspersons receiving mail at their offices).

Here, similarly, plaintiff is seeking relief that defendant explained is impossible and that defendant stated it cannot properly do under the statute. The USPS denied plaintiff's prohibitory order application because the Crunch mailpiece was addressed to "Our Neighbor" and the sender "will not have addressee name and address in their mailing database to remove." Compl. 54. Nevertheless, plaintiff persisted in his efforts to obtain the prohibitory order against Crunch and to get his address removed from the EDDM -- by appealing the denial within USPS agency channels, seeking assistance from Senator Schumer's office, and filing a FTCA administrative claim. He has been denied at every turn because his requests have been deemed to fall outside the Pandering Law's statutory and regulatory criteria, and he has been told repeatedly that it is effectively impossible for him to "opt out" of the EDDM given the current design of the USPS' mail systems. Not accepting what he has been told, plaintiff now seeks the same relief through the instant lawsuit. While the Court acknowledges plaintiff's frustration, the Court cannot grant him the relief that he seeks. We must apply the law as it exists.

It is not clear that the Postmaster General has a plainly defined and peremptory duty to issue prohibitory orders. Some of the caselaw contains language suggesting that the request process under § 3008 is permissive, i.e., that sub-sections (a) and (b) are enabling provisions that delegate authority but do not create a duty.[30] E.g., United States v. Consol. Prods., Inc., 326 F. Supp. 603, 606-08 (C.D. Cal. 1971) ("the basic purpose of this statute was to *provide a procedure* whereby an individual householder could choose not to receive further mailings from a particular sender") (emphasis added); Carlin Commc'ns, Inc. v. F.C.C., 749 F.2d 113, 122 n.13

---

[30] The only clear statutory duty that comes out of Rowan is the Postmaster General's duty, under sub-section (d), to determine whether a sender has violated a prohibitory order, including determining 1) whether the initial mailing included advertising content and 2) whether the sender mailed an item to the addressee more than thirty days after receipt of the prohibitory order. See 397 U.S. at 735 n.4. This duty is inapplicable to plaintiff's case as no prohibitory order was issued against Crunch.

(2d Cir. 1984) ("a scheme used by the postal service whereby individuals *may request* material that they consider 'to be erotically arousing or sexually provocative' not be delivered.") (emphasis added). In addition, the postal regulations implementing the statute provide several bases for denying a prohibitory order application, as discussed further below. See DMM § 508.9. Thus, the relevant regulations contradict the notion that the Postmaster General has a peremptory duty to issue a prohibitory order upon request.

Moreover, by stating that he is "injured according to the regulation of an executive department for the Prohibitory Order," Compl. 67, plaintiff is effectively challenging the "propriety of the regulations themselves" rather than a postal official's failure to comply with the regulations. Under Smith, this is not an appropriate basis for mandamus relief. 709 F.2d at 779.

For all of these reasons, plaintiff is not entitled to the extraordinary remedy of mandamus.

## PLAINTIFF'S FTCA CAUSE OF ACTION

I.    FTCA Waiver of Sovereign Immunity

Although the Postal Reorganization Act provides that the Postal Service may be sued in its official name, it also provides that the FTCA applies "to tort claims arising out of activities of the Postal Service." Dolan v. U.S. Postal Serv., 546 U.S. 481, 484 (2006) (citing 39 U.S.C. §§ 401(1), 409(c)). "The FTCA waives the government's sovereign immunity in actions for money damages arising out of injury, loss of property, personal injury or death caused by the 'negligent or wrongful' act or omission of a government employee 'while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" Fountain v. Karim, 838 F.3d 129, 135 (2d Cir. 2016) (quoting 28 U.S.C. § 1346(b)(1)). Although the FTCA waives the government's sovereign immunity for such tort

actions, § 2680 of the Act also "carve[s] out certain exceptions to this broad waiver of sovereign immunity" which, if they apply to a case, preserve the government's immunity. Raila v. United States, 355 F.3d 118, 119 (2d Cir. 2004); 28 U.S.C. § 2680. "Each provision of the FTCA which could divest the court of jurisdiction must be separately considered...the reasoning applicable to one exception need not be consistent with the reasoning applicable to another one." Watson v. United States, 179 F. Supp. 3d 251, 269 (E.D.N.Y. 2016), aff'd in part, rev'd in part, 865 F.3d 123 (2d Cir. 2017). The first two provisions of § 2680 are at issue in this case.

II.    § 2680(a) Exception

Pursuant to § 2680(a), the FTCA waiver of sovereign immunity does not apply to:

> "[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

"Plaintiffs bear the initial burden to state a claim that is not barred by the [provision]." Molchatsky v. United States, 713 F.3d 159, 162 (2d Cir. 2013).[31]   The congressional intent behind § 2680(a) was to prevent attacks on the validity of statutes, regulations, rules, and policies through FTCA actions. See Dalehite v. United States, 346 U.S. 15, 29 n.21 (1953) (quoting the Act's legislative history) ("Nor is it desirable or intended that...the legality of a rule or regulation should be tested through the medium of a damage suit for tort."). § 2680(a) contains

---

[31] But see Fernandini v. United States, No. 15-CV-3843 (GHW), 2019 WL 1033797, at *3 n.1 (S.D.N.Y. Mar. 5, 2019) ("Neither the Second Circuit nor the United States Supreme Court has explicitly answered whether the United States or a plaintiff bears the ultimate burden of proving the applicability of the discretionary function exception.  And district courts have reached contradictory conclusions on the issue.  The Court need not reach this question in this case, however, because the discretionary function exception readily applies here regardless of which party bears the burden to establish its applicability.")  (internal citations and quotations marks omitted).

within it two related exceptions: the due care exception ("DCE") and the discretionary function exception ("DFE"). 28 U.S.C. § 2680(a); Watson, 179 F. Supp. 3d at 270.

### a. Due Care Exception

Although the Second Circuit has not set forth a test for the due care exception (DCE), several courts in this Circuit have adopted a two-part test for whether the DCE applies. E.g., Nwozuzu v. United States, No. 14 Civ. 8589 (LGS), 2015 WL 4865772, at *5 (S.D.N.Y. Aug. 12, 2015), aff'd, 712 F. App'x 31 (2d Cir. 2017) (citing Crumpton v. Stone, 59 F.3d 1400, 1403 (D.C. Cir. 1995) and Welch v. United States, 409 F.3d 646, 652 (4th Cir. 2005)). First, the Court "determine[s] whether the statute or regulation in question specifically pr[e]scribes a course of action for an officer to follow," and if the first prong is met, the Court then "inquire[s] as to whether the officer exercised due care in following the dictates of that statute or regulation. If due care was exercised, sovereign immunity has not been waived." Welch, 409 F.3d at 652 (citing Crumpton, 59 F.3d at 1403). "Exercising due care 'implies at least some minimal concern for the rights of others.'" Nwozuzu v. United States, 712 F. App'x 31, 32 (2d Cir. 2017) (summary order) (citing Myers & Myers, Inc. v. U.S. Postal Serv., 527 F.2d 1252, 1262 (2d Cir. 1975) and quoting Hatahley v. United States, 351 U.S. 173, 181 (1956)). Unlike the DFE, "the due care exception applies to situations where a statute or regulation *requires* an action to be taken." Watson, 179 F. Supp. 3d at 270 (emphasis in original).

### b. Discretionary Function Exception

The Supreme Court cases Berkovitz v. United States, 486 U.S. 531 (1988) and United States v. Gaubert, 499 U.S. 315 (1991) establish a two-prong framework, called the Berkovitz-Gaubert test, for determining whether governmental conduct falls within the DFE. Coulthurst v. United States, 214 F.3d 106, 108-09 (2d Cir. 2000). "The DFE bars suit only if two conditions

are met: (1) the acts alleged to be negligent must be discretionary, in that they involve an 'element of judgment or choice' and are not compelled by statute or regulation and (2) the judgment or choice in question must be grounded in 'considerations of public policy' or susceptible to policy analysis." Molchatsky, 713 F.3d at 162 (quoting Coulthurst, 214 F.3d at 109). "Applying the first prong, the court first must identify the conduct that is alleged to have caused the harm, then determine whether that conduct can fairly be described as discretionary." Kwitek v. U.S. Postal Serv., 694 F. Supp. 2d 219, 227 (W.D.N.Y. 2010) (citation omitted). In other words, "[the] court's task is to determine whether the conduct alleged to have caused the harm in this case is the type of governmental activity Congress sought to protect from tort liability by the discretionary function exception." Id.

> c.   *The Conduct Alleged to Have Caused Harm*

Here, plaintiff's claim is susceptible to different interpretations in terms of the timing and the scope of his claim.

In the section of his complaint titled "Statement of Claim," plaintiff states: "The addressee of postal mail has unreviewable discretion to decide whether to receive further material from a particular sender, and a vendor does not have a constitutional right to send unwanted material to an unreceptive addressee. My personal injury started Sat.10/21/2017, 6:05p, when I was denied a Prohibitory Order against Crunch Fitness." Compl. 5-6. Plaintiff further alleges that USPS has a pattern of extreme and outrageous conduct and states, "I am not getting my Prohibitory Orders after I submit PS Form 1500…Offensive, lewd and salacious unsolicited advertisements is being pressed upon me through USPS EDDM, USPS ECRWSS and/or USPS ECRWSH." Compl. 8, 6. He also requests 1) a series of prohibitory orders against various entities, and 2) removal of his name and address from Every Door Direct Mail (EDDM),

Extended Carrier Route Walking Sequence Saturation (ECRWSS), Enhanced Carrier Walk Sequence High-Density (ECRWSH), and from "businesses, commercial, noncommercial, religious, political speech, charitable and marketing by USPS." Compl. 8, 6.   Plaintiff also attaches additional pages to his FTCA claim form to explain the basis of his claim, Compl. 66-78, where he states: "I am injured according to an Act of Congress in Title 39 USC 3008, formerly 4009.   I am injured according to the regulation of an executive department for the Prohibitory Order.   I could Opt Out for credit cards and insurance offers. I could Opt Out for National Direct Mail. Why I can not Opt Out from USPS Every Door Direct Mail?   I am injured due to Every Door Direct Mail [EDDM], Extended Carrier Route Walking Sequence Saturation [ECRWSS] and Enhanced Carrier Walk Sequence High-Density [ECRWSH] systems," Compl. 67, and "[i]t is my bonafide belief that I will have future injuries because my address can not be removed from the EDDM system without removing my address from the Address Management System, rendering it unrecognizable by the Postal Service and other mailers," Compl. 71.

As averred in his "Statement of Claim" and the first page of his FTCA administrative claim form, plaintiff's claim is limited to the denial of the prohibitory order against Crunch in October 2017.   Compl. 6, 64.   Viewed more broadly, plaintiff's claim could be viewed as challenging the Postal Service's regulations in the DMM and the EDDM program.

Regardless of whether the claim is construed narrowly or more broadly, plaintiff's claim falls within the § 2680(a) exception.

> *d. Plaintiff's Harm Resulting from the EDDM is Barred by the DFE*

JO Shapiro's opinion provides context on the EDDM, ECRWSS, and ECRWSH complained of in plaintiff's pleadings:

> "The Postal Service describes its Every Door Direct Mail service program (EDDM) as follows: What is Every Door Direct Mail Service? With Every Door

Direct Mail (EDDM) service from the U.S. Postal Service, you can get help reaching potential customers in nearby neighborhoods-and you don't even need to know names or street addresses. Simply identify the delivery routes you want to reach, prepare your mailpieces, drop off your mailpieces with us, and we'll deliver the printed pieces to the active addresses in your designated area. https://www.usps.com/business/pdf/every-door-direct-mail-userguide.pdf.   USPS Enhanced Carrier Route Walking Sequence Saturation presort (ECRWSS) and Enhanced Carrier Walk Sequence High-Density presort (ECRWSH) are not mail service programs. Rather, they are workshare levels within the Postal Service's Marketing Mail classes of mail, providing postage discounts for marketing mail, and requiring, among other things, that senders sort the marketing mail by carrier route in delivery sequence. *See Mailing Standards of the United States Postal Service, Domestic Mail Manual*, § 240." Compl. 41.[32]

The USPS letter to Senator Schumer further explains how plaintiff's requests are

incompatible with the Postal Service's EDDM program:

"I understand Mr. Clayton's concerns about the receipt of unwanted mail.  Mr. Clayton has requested that his name, address, apartment number, and ZIP Code be removed from the U.S. Postal Service's Every Door Direct Mail (EDDM) system, Extended Carrier Route Walking Sequence Saturation system, and Enhanced Carrier Walk Sequence High-Density system.  Mr. Clayton is requesting relief under the Pandering Statute, 39 U.S.C. § 3008…We contacted attorneys at postal headquarters, who advise that Mr. Clayton's request is beyond the scope of the remedy authorized by the Pandering Statute. When one of the Postal Service's systems is used to provide the addressee's information, the mailer would not have an addressee's name or address to remove in their database—the statutorily available remedy under the Pandering Statute.  In addition, we were informed by Product Management officials that it is not possible to remove an address from the EDDM system without removing it entirely from our Address Management System, rendering it unrecognizable by the Postal Service and other mailers." Compl. 93.

ALJ Mego's opinion summarized plaintiff's conundrum well and reveals the discretionary nature

of the denials of plaintiff's requests: "Mr. Clayton appears to be arguing that the Postal Service

should have the equivalent of a do-not-call list to opt out of the mailing programs which led to

the denial of his Applications. Part 963 also does not give this office the authority to rule on that

policy issue…This office is not the forum for a mailer to appeal the denial of an application or to

---

[32] The Government reiterates in its brief that "ECRWSS and ECRWSH are not mail service programs, but rather levels of mail class that provide postage discounts for certain marketing mail." Def. Mem. 8.

contest Postal Service policies and programs related to that denial." Compl. 52. Similarly, this Court has no power under the FTCA to reverse the Postal Service's decisions on prohibitory order applications nor overrule the Postal Service's judgments on how to reconcile an apparent incongruity between the EDDM program and administration of the Pandering Law.

United States v. Gaubert and Fazi v. United States provide the rationale for why the Center's denial of plaintiff's Crunch prohibitory order application falls within the DFE. See Gaubert, 499 U.S. at 325 (holding that discretionary conduct may include decisions made at the "operational" level and "is not confined to the policy or planning level."); Fazi v. United States, 935 F.2d 535, 537-39, (2d Cir. 1991) (affirming that provision of a security escort to a USPS contract carrier was discretionary and not mandated by the agency's regulations). Fazi clarifies that, "[w]hen there are government regulations bearing on day-to-day decisions, applicability of the discretionary function exception depends largely on whether or not the regulation specifically 'mandates particular conduct.' When the claim is that the injury was caused by a failure to comply with a regulation that 'specifically prescribes a course of action for an employee to follow,' the discretionary function exception does not bar the claim." Fazi, 935 F.2d at 538 (quoting Berkovitz, 486 U.S. at 536 and Gaubert, 499 U.S. at 324). In contrast, "if the regulation is not sufficiently specific to control the conduct in question, or is not mandatory, there is room for discretion: 'if a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations.'" Fazi, 935 F.2d at 538 (citing Gaubert, 499 U.S. at 324) (internal citations omitted). See also Gaubert, 499 U.S. at 324-325 ("When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it

must be presumed that the agent's acts are grounded in policy when exercising that discretion. For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime.")

Here, the day-to-day decisions on prohibitory orders are governed by § 508.9 of the DMM.  DDM § 508.9.1.9 (captioned "Denying Application") enumerates six (6) bases to deny a prohibitory order:

> A prohibitory order is not issued when the application is based on any of these: a. The request of a person who the USPS finds does not qualify under any of the foregoing paragraphs of this section. b. A mailpiece that the USPS finds does not offer matter for sale. c. A mailpiece not originating with the person against whom the order is sought (e.g., a newspaper or magazine not mailed by the person on whose advertisement the application is based). d. A mailpiece received by a foreign addressee who has no regular mailing address at which mail is delivered directly by the USPS. e. A mailpiece sent by a mailer not subject to U.S. jurisdiction. f. *A basis in any other way insufficient under the statute.* (emphasis added)

As the DDM allows an employee to decide whether the application's basis is "insufficient under the statute," the regulation on its face involves matters of judgment that are left to the employee implementing the regulation, giving rise to a presumption that the employee's judgments are grounded in policy considerations.  Further, plaintiff's Crunch prohibitory order application was denied because an EDDM mailer would not have an addressee's name or address to remove in their database.  This denial involved an element of judgment grounded in considerations of policy.  As the EDDM program precluded granting plaintiff's prohibitory order application, the USPS made a choice: rather than re-design the EEDM or create an opt-out procedure as plaintiff suggests, the Center simply denied plaintiff's application.  The complaint's allegations support a finding that the USPS employees made judgments grounded in policy and do *not* support a finding that USPS employees denied

plaintiff's Crunch application based on factors unrelated to policy objectives, such as laziness or haste. Cf. Coulthurst, 214 F.3d at 109; Kwitek, 694 F. Supp. 2d at 228.

The Court is mindful that these decisions are profoundly frustrating to plaintiff. Yet, the Second Circuit explains that "[t]he DFE is not about fairness, it is about power; the sovereign reserves to itself the right to act without liability for misjudgment and carelessness in the formulation of policy." Molchatsky, 713 F.3d at 162 (international citations and quotations marks omitted). The Supreme Court makes clear that "the purpose of the exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." Gaubert, 499 U.S. at 323 (internal quotation marks and citations omitted). See also Fazi, 935 F.2d at 537 ("The discretionary function exception precludes claims based on decisions at the policy or planning level. Decisions at this level include decisions as to whether or not to adopt regulations and as to the content of such regulations." (citing Caban v. United States, 671 F.2d 1230, 1233 (2d Cir. 1982) for the proposition that the DFE "protects against tort challenges to decisions based on political practicability or economic expediency")). While § 3008 may appear to create a right without a remedy, the FTCA is not a statute under which plaintiff may grieve his concerns regarding the Pandering Law regulations and how the USPS designs its mail systems. This Court has no jurisdiction over the policy considerations that led to the design of the EDDM system and the resulting denial of plaintiff's prohibitory order application.

*e. Alternatively, Plaintiff's Claim is Barred by the DCE*

Furthermore, assuming *arguendo* that both prongs of the Berkovitz-Gaubert test are not satisfied, plaintiff's claims would instead fail under the due care exception. The postal regulations prescribe that a prohibitory order should not be issued when the application is based

on an insufficient basis under the statute. DMM § 508.9. At the Center level, the USPS denied plaintiff's application because the mailer would not have the addressee name in their mailing database to remove. Moreover, the letter to Senator Schumer explained that removal of plaintiff's name and address from the EDDM system was not a statutorily available remedy. Accordingly, the Center's decision was a reasonable action to take in accordance with the dictates of the Pandering Law and the corresponding DMM regulations. Further, sending a form explaining the basis of the denial demonstrates "some minimal concern for the rights of others."[33] See Nwozuzu, 712 F. App'x at 32.

III.    § 2680(b) Exception

The United States may be held liable for torts committed by postal service employees, but the United States is not liable for torts that fall within the FTCA exception codified at § 2680(b), known as the Postal Matter Exception (PME): the FTCA's waiver of sovereign immunity does not apply to "[a]ny claim arising out of the loss, miscarriage, or negligent transmission of letters or postal matter." 28 U.S.C. § 2680(b); Dolan, 546 U.S. at 485. The Supreme Court sheds light on the scope of the PME in Dolan v. U.S. Postal Services. The Court acknowledged that the exception's "negligent transmission" phrase "could embrace a wide range of negligent acts committed by the Postal Service in the course of delivering mail," Dolan, 546 U.S. at 486, but concluded that "both context and precedent require a narrower reading, so that

---

[33] Notably, the DCE exception would not apply to the Center's denial if it had ignored its regulatory or statutory mandate. See Watson, 179 F. Supp. 3d at 271 ("[T]he due care exception only applies where a government official is acting in accordance with a statute or regulation."). However, this Court is satisfied that the USPS acted in accordance with its regulatory and statutory mandate. Although plaintiff reads Rowan to stand for the proposition that an addressee's rights under § 3008 are unlimited, mail customers do not have carte blanche under the Pandering Law, as discussed supra, and USPS employees may decide that customers' requests do not meet criteria under the agency's regulations or the statute. To the extent that plaintiff is challenging the validity of the Postal Service's implementing regulations, a FTCA lawsuit is not the proper vehicle for such a challenge.

'negligent transmission' does not go beyond negligence causing mail to be lost or to arrive late, in damaged condition, or at the wrong address," id. (citing the holding in Raila v. United States, 355 F.3d 118, 121 (2d Cir. 2004) that the PME covers only "damages and delay of the postal material itself and consequential damages therefrom"). Furthermore, the Court explains that "mail is 'lost' if it is destroyed or misplaced and 'miscarried' if it goes to the wrong address." Dolan, 546 U.S. at 487. The Court rejected the government's argument that Congress intended to except all delivery-related torts, and instead reasoned that "Congress did not intend to immunize all postal activities," and more likely intended to immunize "as a general rule, only [] injuries arising, directly or consequentially, because mail either fails to arrive at all or arrives late, in damaged condition, or at the wrong address." Dolan, 546 U.S. at 489. Cf. Dolan, 546 U.S. at 494 n.1 (Thomas, J., dissenting) (arguing for a broader construction of "transmission" that that would "exempt[] the Government from liability for *any* claim arising out of the negligent delivery of the mail to a Postal Service patron" and would include "the handling, processing, and delivery of mail to a final destination.") (emphasis in original). The Court provided examples of what would fall within the exception: "personal or financial harms arising from nondelivery or late delivery of sensitive materials or information (*e.g.,* medicines or a mortgage foreclosure notice) or from negligent handling of a mailed parcel (*e.g.,* shattering of shipped china)." Dolan, 546 U.S. at 489.

Here, plaintiff's claims do not fall squarely within the Postal Matter Exception. The government's argument is contrary to the majority opinion in Dolan and attempts to revive the theories rejected by Dolan and Raila. Plaintiff does not allege that his mail was destroyed, misplaced, delayed, damaged, or sent to the "wrong" address and thus his claim does not fit within the exception as narrowly defined by Dolan. Cf. Pierre v. United States Postal Serv., No.

18-CV-7474 (MKB), 2019 WL 653154, at *3 (E.D.N.Y. Feb. 15, 2019) (collecting cases where plaintiff's claim is barred by § 2680(b)).

IV.   Failure to State a Claim

In the event that the District Court determines that it has subject matter jurisdiction over plaintiff's tort claims, I recommend that plaintiff's action should be dismissed for failure to state a claim. "[T]he FTCA directs courts to consult state law to determine whether the government is liable for the torts of its employees." Liranzo v. United States, 690 F.3d 78, 86 (2d Cir. 2012) (citations omitted). Therefore, the Court should apply New York law to plaintiff's claims.

Plaintiff's complaint alleges the tort of intentional infliction of emotional distress (IIED). Compl. 8-9.   Plaintiff also attaches to the complaint his administrative claim form, which provides a description of his injury as: "1) captive audience 2) petition government 3) emotional injury 4) invasion of privacy 5) intentional infliction of emotional distress 6) negligent infliction of emotional distress 7) insulated 8) censoring 9) unfettered discretion 10) to be left alone." Compl. 64.   The Court construes the complaint to allege the torts of Intentional Infliction of Emotional Distress (IIED) and Negligent Infliction of Emotional Distress (NIED).[34]

a.   Intentional Infliction of Emotional Distress (IIED)

A plaintiff alleging intentional infliction of emotional distress (IIED) "must satisfy an 'exceedingly high legal standard.'" DiRuzza v. Lanza, 685 F. App'x 34, 36 (2d Cir. 2017) (summary order) (quoting Chanko v. Am. Broad. Cos. Inc., 27 N.Y.3d 46, 57 (2016)).   To

---

[34] Of the claims listed, these are the only cognizable tort claims under New York law.  Plaintiff cannot state a claim for "invasion of privacy."  Although New York provides limited statutory privacy rights, "[i]t is well-established that New York does not recognize a common-law right to privacy."  Edme v. Internet Brands, Inc., 968 F. Supp. 2d 519, 527 (E.D.N.Y. 2013) (internal quotation marks and citations omitted).  New York's privacy statute, N.Y. Civ. Rights Law §§ 50-51, addresses the commercial use of an individual's name, portrait, or likeness without written permission, Edme, 968 F. Supp. at 528, and does not apply to this case.

prevail on an IIED claim in New York, plaintiff must establish four elements: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." Chanko, 27 N.Y.3d 46, 56 (2016) (quoting Howell v. New York Post Co., 81 N.Y.2d 115, 121 (1993)). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Chanko, 27 N.Y.3d at 56 (quoting Howell, 81 N.Y.2d at 122). The outrageousness element is "most susceptible to a determination as a matter of law." Chanko, 27 N.Y.3d at 57 (citing Howell, 81 N.Y.2d at 121). Of the IIED claims considered by the New York Court of Appeals, "*every one* has failed because the alleged conduct was not sufficiently outrageous." Chanko, 27 N.Y.3d at 57 (emphasis in original) (quoting Howell, 81 N.Y.2d at 122). "The standard of outrageousness is an objective one; even if the defendant is aware of some peculiar susceptibility of the plaintiff to emotional distress, the conduct must still be objectively outrageous to be actionable." Marshall v. Marshall, No. 08-CV-1420 (KAM)(LB), 2010 WL 5477753, at *10 (E.D.N.Y. Dec. 7, 2010), report and recommendation adopted, 2010 WL 5477152 (E.D.N.Y. Dec. 30, 2010) (quoting Netzer v. Continuity Graphic Assoc., 963 F. Supp. 1308, 1327 (S.D.N.Y.1997)).

Here, the Postal Service's conduct does not meet New York's definition of extreme and outrageous conduct. The main thrust of plaintiff's IIED claim is that the USPS wrongfully denied his application for a prohibitory order regarding Crunch in contravention of Rowan and § 3008. See Pl. Opp'n 27-31. Yet, the Center's denial form, the ALJ's and JO's opinions, and the Postal Service's response to Senator Schumer's inquiry acknowledged plaintiff's request and

explained why it could not be granted. Although plaintiff may genuinely find the USPS'

decisions profoundly upsetting, there is nothing extreme or outrageous about any of the USPS'

employees' conduct. As plaintiff cannot establish extreme and outrageous conduct, he fails to

state a claim for IIED and the Court need not examine the remaining elements.

### b.  *Negligent Infliction of Emotional Distress*

To state a claim for NIED under New York law,[35] plaintiff must establish the following

elements: 1) plaintiff was owed a duty; 2) defendant breached that duty, and 3) as a result,

plaintiff suffered emotional injury.[36] Roe v. United States, No. 18-CV-2644 (VSB), 2019 WL

1227940, at *5 (S.D.N.Y. Mar. 15, 2019) (citing Fisk v. Letterman, 424 F. Supp. 2d 670, 676

(S.D.N.Y. 2006)). A NIED claim based on "[a] breach of the duty of care resulting directly in

emotional harm is compensable even though no physical injury occurred when the mental injury

is a direct, rather than a consequential, result of the breach and when the claim possesses some

guarantee of genuineness." Ornstein v. N.Y.C. Health & Hosps. Corp., 10 N.Y.3d 1, 6 (2008)

(internal citations and quotation marks omitted).

The duty breached "must be specific to the plaintiff, and not some amorphous, free-

floating duty to society." Chau v. Donovan, 357 F. Supp. 3d 276, 289 (S.D.N.Y. 2019) (quoting

---

[35] Under New York law, a plaintiff may establish a NIED claim under two theories: the "bystander" theory or the "direct duty" theory. Lloyd v. City of New York, 246 F. Supp. 3d 704, 730 (S.D.N.Y. 2017) (citing Mortise v. United States, 102 F.3d 693, 696 (2d Cir. 1996)). The "bystander" theory applies where a defendant "creat[es] an unreasonable risk of bodily harm to a plaintiff and such conduct is a substantial factor in bringing about injuries to the plaintiff in consequence of shock or fright resulting from his or her contemporaneous observation of serious physical injury or death inflicted by the defendant's conduct on a member of the plaintiff's immediate family in his or her presence." Lloyd, 246 F. Supp. 3d at 730 (quoting Bovsun v. Sanperi, 61 N.Y.2d 219, 224 (1984)). As plaintiff does not allege that he observed a serious physical injury to an immediate family member, the bystander theory does not apply to this case.
[36] Courts differ on whether outrageous conduct is required to prevail on an NIED claim. Compare Herrick v. Grindr, LLC, 306 F. Supp. 3d 579, 594 n.12 (S.D.N.Y. 2018), aff'd, 765 F. App'x 586 (2d Cir. 2019), with Ivery v. Baldauf, 284 F. Supp. 3d 426, 441 (W.D.N.Y. 2018).

Mortise, 102 F.3d at 696). See also Burroughs v. Mitchell, 325 F. Supp. 3d 249, 285 (N.D.N.Y. 2018) ("This duty is far more specific than the more generalized duty to avoid negligently injuring another.") (citations omitted). The violation or disregard of a statutory duty may qualify as such a specific duty to the plaintiff. See Roe v. United States, No. 18-CV-2644 (VSB), 2019 WL 1227940, at *5 (S.D.N.Y. Mar. 15, 2019) (collecting cases).

The guarantee of genuineness "generally requires a specific, recognized type of negligence that obviously has the propensity to cause extreme emotional distress, such as the mishandling of a corpse or the transmission of false information that a parent or child had died. Otherwise, the 'guarantees of genuineness' element generally requires that the breach of the duty owed directly to the injured party must have at least endangered the plaintiff's physical safety or caused the plaintiff to fear for his or her own physical safety." J.H. v. Bratton, 248 F. Supp. 3d 401, 416 (E.D.N.Y. 2017) (internal quotation marks and citations omitted) (quoting Taggart v. Costabile, 131 A.D.3d 243, 253 (N.Y. App. Div. 2d Dep't 2015)). Indeed, "New York courts have expressed a longstanding reluctance to recognize causes of action for negligent infliction of emotional distress, especially in cases where the plaintiff suffered no independent physical or economic injury." Colorado Capital Invs., Inc. v. Owens, 304 F. App'x 906, 908 (2d Cir. 2008) (summary order) (internal citations and quotation marks omitted).

Here, although plaintiff discusses negligence under New York law extensively, he does not identify a specific duty owed to him outside the general duty of care. Pl. Opp'n 31-36. However, even assuming *arguendo* that the Post Office had a statutory or regulatory duty to issue a prohibitory order upon request, plaintiff still cannot establish an NIED claim because plaintiff cannot meet the genuineness requirement. The genuineness guarantee is not met because, even assuming the USPS was negligent, the Postal Service's denial is not the "type of

negligence that obviously has the propensity to cause extreme emotional distress." Moreover, although plaintiff alleges that he is "being harassed in [his] mailbox," "[m]ailers are trespassing against me," and "I am being treaded on," Compl. 7, and that he suffers acute stress reaction as a result, including "[e]xtreme sadness, anxiety, and anger," Compl. 8, he does not allege either an independent physical or economic injury. He also does not allege threat to or fear for his physical safety.[37] Accordingly, plaintiff fails to state a claim for NIED.

## LEAVE TO REPLEAD

Although leave to amend a complaint should be freely given "when justice so requires" under Rule 15, the Court should deny leave to amend when it would be futile. Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002) (citation omitted); Fed. R. Civ. P. 15(a)(2). See also Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) ("[T]he court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.") Here, plaintiff was offered the opportunity to amend his complaint, which he declined on the record at the February 21, 2019, pre-motion conference. See Ct. Order, ECF No. 24. More importantly, however, because the Court lacks subject matter jurisdiction over plaintiff's claims, any amendment would be futile. Therefore, I respectfully recommend that plaintiff should not be granted leave to replead. Cf. Kuhner v. Montauk Post Office, No. 12-CV-2318 (JFB)(GRB), 2013 WL 1343653, at *3 (E.D.N.Y. Apr. 4, 2013) (concluding that claim fell within FTCA

---

[37] Although plaintiff states that he is "being held captive in my home," the Court does not construe plaintiff's complaint to allege actual confinement, as plaintiff subsequently quotes Rowan, "[t]hat we are often 'captives' outside the sanctuary of the home and subject to objectionable speech and other sounds does not mean we must be captives everywhere." Compl. 7. In attachments to the complaint, plaintiff also refers to "captive audience doctrine." Compl. 60.

exception, no amendment could "cure the jurisdictional defect," and thus any amendment would be futile).

## CONCLUSION

For the reasons set forth above, it is respectfully recommended that defendant's motion to dismiss plaintiff's complaint should be granted under Rule 12(h)(3), or alternatively under Rule 12(b)(6), of the Federal Rules of Civil Procedure.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42, 46 (2d Cir. 2002); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

/S/ Judge Lois Bloom

LOIS BLOOM
United States Magistrate Judge

Dated: August 1, 2019
        Brooklyn, New York